A94A0258. REAUGH v. INNER HARBOUR HOSPITAL, LTD.
et al.
(447 SE2d 617)

BEASLEY, Presiding Judge.

From January 14, 1985, until November 21, 1986, plaintiff Reaugh participated in a treatment program operated by defendant Inner Harbour Hospital, Ltd., f/k/a Anneewakee, Inc. We refer to defendant as Anneewakee, since that was its name at the time of the events giving rise to this suit. On January 30, 1988, she reached the age of majority. On December 3, 1991, she filed the present complaint against Anneewakee and others. Anneewakee was a Georgia corporation which provided medical, psychiatric, and educational counseling treatment to student admittees through a vocational program in a wilderness setting.

Plaintiff's parents and Anneewakee entered into an agreement pursuant to which plaintiff was admitted as a participant in the Anneewakee program. The agreement contained a release under which her parents, and purportedly plaintiff as "participant," released Anneewakee from any and all claims, causes of actions, or damages that the participant and her parents jointly or individually might have or acquire against Anneewakee arising out of any injury, damage, or loss sustained by them. The agreement also contained a covenant not to sue employing similar language. In addition, the agreement contained a merger clause.

In the complaint, as amended, plaintiff alleged that defendants violated Georgia laws by engaging in, and conspiring to conceal, one or more of the following acts: assault, battery, false imprisonment, mental cruelty, charging plaintiff's family for services not actually rendered or fully performed as claimed in the billings for medical care and psychiatric counseling, interrupting communications in order to control information about physical abuse and mental cruelty, theft, misrepresentation, and fraud and deceit.

She seeks a recovery against defendants for damages resulting from their wrongful acts. In Counts 1 through 5 of her complaint, she has asserted claims against defendants for violations of the Georgia Racketeer Influenced & Corrupt Organizations Act ("RICO"), breach of third-party beneficiary contract, breach of written contract, fraud, and breach of fiduciary duty.

Plaintiff charges defendants with engaging in a pattern of racketeering activity involved, but not limited to, mail fraud and violations of Georgia law elsewhere alleged in the complaint.

Plaintiff testified that Anneewakee did not provide her with psychological counseling, dental care, and educational assistance for which her parents were billed. She also testified that she was subjected to dehumanizing acts and forced to engage in extremely strenuous labor for which she was not compensated. She submitted evidence that Anneewakee employees were convicted of committing sexual offenses against participants in the program. She also submitted affidavits of other participants, who testified that they had been sexually abused at Anneewakee, that they spent most of their time doing unpaid labor for Anneewakee's benefit, and that Anneewakee failed to provide classroom instruction and therapy sessions for which it billed.

The trial court granted Anneewakee's motion for summary judgment. The court ruled that plaintiff's breach of third-party beneficiary and written contract claims are barred by the release and because her parents, not she, paid for the services which were supposed to have been rendered under the contract. Although plaintiff argues that the release violates public policy, the court ruled that plaintiff had put forth no public policy that it violates. The court concluded that her claim of fraudulent inducement is barred by the merger clause, because she elected to affirm the contract and sue for damages rather than rescind it. The court ruled that any personal injury claims are barred by the two-year statute of limitation in OCGA § 9-3-33. The court disposed of plaintiff's RICO claim by concluding that it is "without merit and subject to summary judgment."

1. Plaintiff contends that her claims are not governed by OCGA § 9-3-33, which requires actions for "injuries to the person" to be brought within two years after the right of action accrues.

OCGA § 9-3-33 is a general statute of limitation. *Daniel v. American Optical Corp.*, 251 Ga. 166, 168 (1) (304 SE2d 383) (1983). As such, it is inapplicable to plaintiff's RICO, fraud, and ex contractu counts. As argued by plaintiff, these counts are governed by statutes of limitation specifically applicable to each. OCGA § 16-14-8 provides a five-year statute of limitation to criminal and civil RICO actions. OCGA § 9-3-24 sets a six-year statute of limitation for all actions upon simple contracts in writing. OCGA § 9-3-31 imposes a four-year statute of limitation on actions for fraud. See *Frost v. Arnaud*, 144 Ga. 26, 29 (1) (85 SE 1028) (1915). There is no statute of limitation otherwise applicable to plaintiff's count alleging breach of fiduciary duties. In this count, she seeks recovery for Anneewakee's failure to provide services for which her parents were billed, and for the crimes and offenses committed against her. To the extent that this count seeks recovery for the latter, it is barred by OCGA § 9-3-33. The scope of this statute is determined by the nature of the injury sustained rather than by the legal theory underlying the claim for relief. *Daniel*, supra.

2. Plaintiff argues that the release and covenant not to sue are unenforceable, void, and against public policy.

We agree that where, as here, parents have entrusted the care, custody, and control of a child to a third party who is contractually obligated to provide medical and educational services to the child, it would be contrary to public policy to allow that party to exculpate itself from liability for harm to the child resulting from that party's failure to provide such services.[1] "Where the performance of a contractual condition would be contrary to the health, safety or welfare of others, it may be considered unenforceable. [Cits.]" *Tidwell Homes v. Shedd Leasing Co.*, 191 Ga. App. 892, 895 (3) (383 SE2d 334) (1989); see also *Porubiansky v. Emory Univ.*, 156 Ga. App. 602 (275 SE2d 163) (1980), aff'd *Emory Univ. v. Porubiansky*, 248 Ga. 391 (282 SE2d 903) (1981).

3. Plaintiff argues that as an intended third-party beneficiary of the contract between her parents and Anneewakee, she is entitled under OCGA § 9-2-20 (b) to recover the reasonable value of the services it failed to provide. In reliance upon *Rose v. Hamilton Med. Center*, 184 Ga. App. 182 (361 SE2d 1) (1987), Anneewakee argues that plaintiff is not entitled to such a recovery, because the right to recover the monies paid by plaintiff's parents belongs to them and not to her. Anneewakee's reliance upon *Rose* is misplaced because *Rose* involved a tort claim. This case involves a claim for breach of contract by an intended third-party beneficiary. OCGA § 9-2-20 (b) states that "[t]he beneficiary of a contract made between other parties for his benefit may maintain an action against the promisor on the contract." This is an exception to the general rule that an action on a contract is brought by a party to it. See *Somers v. Avant*, 244 Ga. 460, 463 (261 SE2d 334) (1979). The remedies available to the beneficiary are exactly the same as would be available to him if he were a contractual promisee of the performance in question. 4 Corbin

---

[1] Ironically, Anneewakee's position is likewise that the release and covenant violate public policy, but only to the extent that they purport to bar plaintiff from asserting her claims for breach of third-party beneficiary contract, breach of written contract, and breach of fiduciary duty. This position is premised on the argument that these are in reality claims for medical malpractice which are barred by the medical malpractice statutes of limitation and repose. The trial court apparently did not agree with this argument, since its rulings in favor of Anneewakee are not based on these claims being ones for medical malpractice. We do not agree with the argument either. A medical malpractice action is a professional negligence action which calls into question the conduct of a professional in his area of expertise. *Candler Gen. Hosp. v. McNorrill*, 182 Ga. App. 107, 110 (2) (354 SE2d 872) (1987). Although plaintiff does allege that Anneewakee failed to provide her with medical services for which her parents were fraudulently billed, she does not allege professional negligence or call into question the conduct of any professional in his area of expertise. She does not seek damages resulting from death or personal injury arising out of health, medical, or dental services rendered. OCGA § 9-3-70.

on Contracts, p. 230, § 810 (1951). We therefore hold that the trial court erred in granting Anneewakee's motion for summary judgment on this claim.

4. Plaintiff insists that she may pursue her claim for fraud in the inducement.

In moving for summary judgment, Anneewakee argued that plaintiff could not avoid operation of the release and covenant not to sue by claiming fraudulent inducement, because she had not sought to rescind the agreement but rather had affirmed it by suing for breach, and it contained a valid merger clause. See *Flair Fashions v. SW CR Eisenhower Drive*, 207 Ga. App. 78, 79 (427 SE2d 56) (1993).

"A contract may be rescinded at the instance of the party defrauded; but, in order to rescind, the defrauded party must promptly, upon discovery of the fraud, restore or offer to restore to the other party whatever he has received by virtue of the contract if it is of any value." OCGA § 13-4-60. Plaintiff asserts that she has received nothing of value to be tendered by her so as to affect a rescission, which Anneewakee contests.

Anneewakee's reliance upon the merger clause is misplaced. That clause states, "There are no promises, terms, conditions or obligations other than those contained herein and therein. With respect to the subject matter hereof, these agreements super[s]ede all previous communications, representations or agreements whether verbal or written, between the parties hereto." Plaintiff's fraud claim is predicated on Anneewakee's false representations that services called for by the agreement would be afforded to plaintiff, as well as Anneewakee's charging plaintiff's account daily psychiatric costs not given. The merger clause does not bar such claims.

We thus conclude that the court erred in granting summary judgment to Anneewakee on plaintiff's fraud claim.

5. Finally, plaintiff contends that the court erred in granting Anneewakee's motion for summary judgment on her RICO claim.

The trial court in its order did not explain the basis for this ruling on this claim. We look to the arguments advanced by Anneewakee in support of it.

(a) Anneewakee's primary argument is that under both the Georgia RICO Act (OCGA § 16-14-1 et seq.) and the federal RICO Act (18 USC § 1961 et seq.), a RICO defendant cannot also be the RICO enterprise. See *Blalock v. Anneewakee, Inc.*, 206 Ga. App. 676, 679 (3) (426 SE2d 165) (1992) (in which this argument was raised but was not resolved). Resolution requires a consideration of the Georgia RICO Act's definition of enterprise, the RICO enterprise in this case, prohibited activities under the state and federal RICO Acts, and the racketeering activity here.

In pertinent part, the Georgia Act defines an "enterprise" as "any

person . . . corporation . . . or other legal entity . . . or group of individuals associated in fact although not a legal entity; and it includes illicit as well as licit enterprises and governmental as well as other entities." OCGA § 16-14-3 (6). Plaintiff alleges that the RICO enterprise consisted of Anneewakee and various other named and unnamed corporations, individuals, and entities. However, she only alleges that she suffered harm at the hands of Anneewakee, its agents, and employees, and Anneewakee is the only defendant upon whom service has been perfected.

Prohibited activities under the Georgia RICO Act are set out in OCGA § 16-14-4. Prohibited activities under the federal RICO Act are set out in 18 USC § 1962. Section 1962 (a) provides, in pertinent part, "It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise. . . ." There is no counterpart provision in the Georgia Act.

Sections 1962 (b) and 16-14-4 (a) are counterpart provisions, although there are significant differences between the two. *Chancey v. State*, 256 Ga. 415, 418 (349 SE2d 717) (1986). Section 16-14-4 (a) states that "[i]t is unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money."

Sections 1962 (c) and 16-14-4 (b) are likewise counterpart provisions. Section 16-14-4 (b) states that "[i]t is unlawful for any person employed by or associated with any enterprise to conduct or participate in, directly or indirectly, such enterprise through a pattern of racketeering activity."

Most courts have construed the express language of § 1962 (c) to require that the "person" who engages in the pattern of racketeering activity be an entity distinct from the "enterprise." *Schofield v. First Commodity &c.*, 793 F2d 28, 29 (1st Cir. 1986) and cits. The policy reason, as articulated in *Parnes v. Heinold Commodities*, 548 FSupp. 20, 23-24 (N.D. Ill. 1982), is that the enterprise may very well be the victim of the racketeering activity. As far as we have detected, only one federal circuit court of appeal has rejected the separate person/enterprise distinction. *United States v. Hartley*, 678 F2d 961, 988 (11th Cir. 1982), cert. denied, 459 U. S. 1170, 1183 (103 SC 815, 74 LE2d 1014) (1983).

However, it was held in *Haroco, Inc. v. American Nat. Bank &c. Co.*, 747 F2d 384, 402 (3) (7th Cir. 1984), aff'd on other grounds, 473 U. S. 606 (105 SC 3291, 87 LE2d 437) (1985), that a corporation-enterprise may be held liable under § 1962 (a) when the corporation is

also a perpetrator. This approach makes the corporation-enterprise liable under RICO when the corporation is actually the direct or indirect beneficiary of the pattern of racketeering activity, but not when it is merely the victim, prize, or passive instrumentality of racketeering. Id. *Haroco's* interpretation of § 1962 (a) has been followed in other circuits. *Petro-Tech v. Western Co. of N. America*, 824 F2d 1349, 1361 (8) (3d Cir. 1987); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F2d 1393, 1398 (2) (9th Cir. 1986). It has likewise been held that under § 1962 (b), which is the counterpart to our § 16-14-4 (a), a corporation may be both the "person" and the "enterprise," if it is the direct or indirect beneficiary of the pattern of racketeering activity. *Schreiber*, supra.

There is evidence that by committing mail fraud, Anneewakee was the perpetrator and direct beneficiary of a pattern of racketeering activity and not merely a victim or passive instrumentality. Compare *First Nat. Bank of Louisville v. Lustig*, 727 FSupp. 276 (E.D. La. 1989); compare also *Big Brother/Big Sister of Metro Atlanta v. Terrell*, 183 Ga. App. 496, 498 (3) (359 SE2d 241) (1987). This subjects Anneewakee to RICO liability under § 16-14-4 (a).

However, in this case there is evidence that Anneewakee agents or employees committed predicate offenses alleged in Reaugh's pleadings, and there are material issues of fact with respect to whether Anneewakee was a party to or involved in the commission of these offenses. Compare *McLendon v. Baker Lumber Co.*, 126 Ga. App. 329 (190 SE2d 622) (1972); *First Nat. Bank of Louisville v. Lustig*, supra. With respect to such offenses, the RICO enterprise may consist of a corporation and its agents or employees. Compare *Lustig*, supra (RICO plaintiff cannot hold a company vicariously liable for racketeering activity of employee).

(b) Anneewakee argues that under § 16-14-4 (a), it is only unlawful to engage in racketeering activity in order to acquire or maintain control of an enterprise, and there is not one shred of evidence that Anneewakee engaged in racketeering activity for this purpose.

This argument is without merit. Section 16-14-4 (a) is broader than its federal counterpart, in that § 16-14-4 (a) makes it unlawful for any person, through a pattern of racketeering activity, to acquire or maintain any interest in or control of "real property, or personal property of any nature, including money," as well as "any enterprise." *Chancey*, supra. There is evidence that Anneewakee (unquestionably a "person" under the RICO Act), through a pattern of racketeering activity, i.e., mail fraud, acquired an interest in or control of money.

(c) Anneewakee argues that by the express terms of § 16-14-2 (b) (declaring that the legislative intent is to impose sanctions against the subversion of the economy by organized criminal elements) and by analogy to § 1964 (c) of the federal RICO Act (only allowing a recov-

ery for injuries to business or property), the Georgia RICO Act precludes recovery for personal injuries.

This argument is without merit. The expression of legislative purpose in enacting Georgia's RICO Act is not an element of a civil cause of action under the Act. *State of Ga. v. Shearson Lehman Bros.*, 188 Ga. App. 120, 121 (2) (372 SE2d 276) (1988). The Georgia Act gives a cause of action to "[a]ny person who is injured by reason of any violation of Code Section 16-14-4. . . ." OCGA § 16-14-6 (c). Unlike the federal Act, it does not limit damages to injuries to business or property.

(d) The fact that Anneewakee was a legitimate corporation does not insulate it from RICO liability. Section 16-14-3 (6) defines "enterprise" as including "illicit as well as licit enterprises." Accord *United States v. Turkette*, 452 U. S. 576 (101 SC 2524, 69 LE2d 246) (1981) (interpreting the federal Act).

Consequently, we hold that the trial court erred in granting Anneewakee's motion for summary judgment on plaintiff's RICO claim.

*Judgment affirmed in part and reversed in part. Andrews and Johnson, JJ., concur.*

DECIDED JUNE 10, 1994 —
RECONSIDERATION DISMISSED JULY 29, 1994 AND
RECONSIDERATION DENIED JULY 29, 1994 —

*Lovett & Hicks, William E. Hicks, Frederick V. Massey*, for appellants.

*Long, Weinberg, Ansley & Wheeler, Marvin A. Devlin, Johnathan T. Krawcheck*, for appellees.